# UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN MICHAEL MERRYMAN, AMY WHITAKER MERRYMAN TRUST, AND B MERRYMAN AND A MERRYMAN 4TH GENERATION REMAINDER TRUST, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>CITIGROUP, INC., CITIBANK, N.A., and CITIGROUP GLOBAL MARKETS INC.,<br><br>        Defendants. | Civil Action No.: 1:15-cv-09185-CM-KNF |

**CITIBANK, N.A.'S MEMORANDUM OF LAW IN OPPOSITION TO
CHESTER COUNTY EMPLOYEES RETIREMENT FUND
AND STEPHEN HILDRETH'S MOTION TO INTERVENE**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................... ii

PRELIMINARY STATEMENT .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................................... 4

      A.     This litigation has been proceeding for nearly three years. ................................... 4

      B.     Over a year and a half after the deadline to add parties and its decision to
            join the Merrymans in their nearly identical action against a different
            depositary, Chester County now seeks to intervene in this action.......................... 6

APPLICABLE STANDARD .............................................................................................. 9

ARGUMENT ...................................................................................................................... 9

I.     THE PROPOSED INTERVENORS' MOTION IS UNTIMELY ................................... 10

      A.     The Proposed Intervenors have known of their interests for several years. ......... 10

      B.     The Depositary will be prejudiced by the significant delay caused by
            having to reopen discovery, move to dismiss the Proposed Complaint, and
            oppose another motion for class certification. ...................................................... 13

      C.     The Proposed Intervenors will not be prejudiced because they may file
            their own action.................................................................................................... 20

CONCLUSION.................................................................................................................. 23

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*American Pipe & Construction Co. v. Utah*,
    414 U.S. 538 (1974)..................................................................................11, 14, 15

*In re Bank of New York Deriv. Litig.*,
    320 F.3d 291 (2d Cir. 2003)..........................................................9, 10, 12, 20

*Baselice v. Franciscan Friars Assumption BVM Province, Inc.*,
    879 A.2d 270 (Pa. Super. Ct. 2005)........................................................18

*California Public Employees' Retirement Systems v. ANZ Securities, Inc.*,
    137 S. Ct. 2042 (2017)...........................................................................12

*Catanzano by Catanzano v. Wing*,
    103 F.3d 223 (2d Cir. 1996)..............................................................10, 12

*Chester Cty. Employees' Ret. Fund v. Ergen*,
    No. 12-CV-03291-PAB-KMT, 2013 WL 673290 (D. Colo. Feb. 22, 2013)............7

*Chester Cty. Employees' Ret. Fund v. Genzyme Corp.*,
    No. 1084-cv-03777 (Mass. Super. Ct. Suffolk Cty. Filed Sept. 24, 2010)...............7

*Chester Cty. Employees' Ret. Fund v. New Residential Inv. Corp.*,
    No. CV 11058-VCMR, 2016 WL 5865004 (Del. Ch. Oct. 7, 2016)......................7

*Chester Cty. Employees' Ret. Fund v. White*,
    No. 11 C 8114, 2012 WL 1245724 (N.D. Ill. Apr. 13, 2012)...................................7

*China Agritech Inc. v. Resh*,
    138 S. Ct. 543 (2017)......................................................................14, 15

*Crown, Cork & Seal Co. v. Parker*,
    462 U.S. 345 (1983)...............................................................................14

*D'Amato v. Deutsche Bank*,
    236 F.3d 78 (2d Cir. 2001)..................................................................12, 13

*Eckert v. Equitable Life Assurance Soc'y of U.S.*,
    227 F.R.D. 60 (E.D.N.Y. 2005)...............................................................13

*In re Energy Transfer Equity L.P. Unitholder Litig.*,
    No. CV 12197-VCG, 2017 WL 782495 (Del. Feb. 28, 2017)............................7

*In re Gaston & Snow*,
    243 F.3d 599 (2d Cir. 2001)...................................................................18

*Gordon v. Hunt*,
   1984 WL 1206 (S.D.N.Y. Oct. 31, 1984) ........................................................................14, 21

*Greenway v. KCG Holdings, Inc.*,
   No. 2017-0421-JTL, 2017 WL 6557959 (Del. Ch. Dec. 20, 2017)...........................................7

*Hnot v. Willis Grp. Holdings Ltd.*,
   2006 WL 3476746 (S.D.N.Y. Nov. 30, 2006), *aff'd*, 234 F. App'x 13 (2d Cir.
   2007) ................................................................................................................................21

*In re Holocaust Victim Assets Litig.*,
   225 F.3d 191 (2d Cir. 2000)........................................................................................20, 21

*Interoceanica Corp. v. Sound Pilots, Inc.*,
   107 F.3d 86 (2d Cir. 1997)..................................................................................................22

*Korwek v. Hunt*,
   827 F.2d 874 (2d Cir. 1987)........................................................................................14, 15

*Leber v. Citigroup 401(K) Plan Inv. Comm.*,
   129 F. Supp. 3d 4, 22 (S.D.N.Y. 2015)................................................................................15

*Levy v. U.S. Gen. Accounting Office*,
   175 F.3d 254, 255 (2d Cir. 1999) (per curiam)....................................................................15

*Leonard v. Abbott Labs, Inc.*,
   2012 WL 764199 (E.D.N.Y. Mar. 5, 2012) .........................................................................23

*In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*,
   2002 WL 31371945 (D. Minn. Oct. 7, 2002) ......................................................................13

*MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.*,
   471 F3d 377 (2d Cir. 2006)..................................................................................................10

*Merryman v. J.P. Morgan Chase Bank, N.A.*,
   319 F.R.D. 468 (S.D.N.Y. 2017) ..................................................................................19, 20

*Merryman v. J.P. Morgan Chase Bank, N.A.*,
   No. 15-CV-9188 (VEC), 2016 WL 5477776 (S.D.N.Y. Sept. 29, 2016),
   *reconsideration denied*, No. 15-CV-9188 (VEC), 2017 WL 456470 (S.D.N.Y.
   Feb. 2, 2017) ...............................................................................................................8, 21

*Namani v. Bezark, Lerner, & Devirgilis, P.C.*,
   2017 WL 57153 (Pa. Super. Ct. Jan. 5, 2017) ....................................................................18

*New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc.*,
   No. 08 CIV. 5653 PAC, 2010 WL 6508190 (S.D.N.Y. Dec. 15, 2010)................................19

*NYTDA, Inc. v. City of N.Y.*,
    2014 WL 4274219 (E.D.N.Y. Aug. 28, 2014) .......................................................................13

*In re Puda Coal Sec. Inc. Litig.*,
    2013 WL 5493007 (S.D.N.Y. Oct. 1, 2013) ........................................................................15

*Rios v. Enter. Ass'n Steamfitters Local Union No. 638 of U. A.*,
    520 F.2d 352 (2d Cir. 1975) ..................................................................................................9

*Robb v. Fitbit Inc.*,
    No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) ...................................7

*Ross v. Patrusky, Mintz & Semel*,
    No. 90 CIV. 1356 (SWK), 1997 WL 214957 (S.D.N.Y. Apr. 29, 1997) ..............................19

*In re Smith Barney Transfer Agent Litigation*,
    884 F. Supp. 2d 152 (S.D.N.Y. 2012) ................................................................................12

*United States v. City of N. Y.*,
    198 F.3d 360 (2d Cir. 1999) ............................................................................................9, 13

*United States v. Pitney Bowes, Inc.*,
    25 F.3d 66 (2d Cir. 1994) ...........................................................................................9, 11, 12

*Walker v. Teachers Ins. & Annuity Ass'n of Am.-Coll. Ret. & Equities Fund*,
    2011 WL 13077069 (D. Vt. Filed Aug. 26, 2011) .............................................................13

**Statutes**

42 Pa. Cons. Stat. Ann. § 5525(a) .............................................................................................18

**Other Authorities**

Fed. R. Civ. P. 15(c)(1) .......................................................................................................19, 21

Fed. R. Civ. P. 17(a) ..................................................................................................................19

Fed. R. Civ. P. 24 ..........................................................................................................15, 19, 21

Fed. R. Civ. P. 24(a)(1) ................................................................................................................9

Fed. R. Civ. P. 24(a)(2) ...........................................................................................................9, 21

Fed. R. Civ. P. 24(b) .....................................................................................................................9

N.Y. C.P.L.R. 202 ......................................................................................................................18

Defendant Citibank, N.A., acting in its capacity as depositary (the "Depositary"), respectfully submits this memorandum of law in opposition to Chester County Employees Retirement Fund ("Chester County") and Stephen Hildreth's (together, with Chester County, the "Proposed Intervenors") Motion to Intervene (ECF Nos. 112-13) (the "Motion" or "Br.").

## PRELIMINARY STATEMENT

The Proposed Intervenors—who have been on notice for at least 18 months that Plaintiffs[1] may not have standing to pursue the Proposed Intervenors' claims—seek through their Motion to unnecessarily delay a three-year-old litigation that is almost trial ready. Nearly a year after fact discovery closed, and two months after this Court's class certification decision concluding that Plaintiffs only have standing to represent the holders of three Depositary-sponsored ADRs[2], the Proposed Intervenors ask this Court to allow them to represent the holders of an additional 18 ADRs, reopen fact discovery, and permit a new round of briefing on class certification, thereby substantially delaying resolution of this matter. The Proposed Intervenors should not be permitted to delay this case further.

Now that class certification has been resolved, the issue of the Depositary's liability should be swiftly resolved. On the question of its liability, the Depositary plans to demonstrate, on summary judgment and/or at trial, that the three Deposit Agreements that govern the conversion of Cash Distributions paid in foreign currency expressly permit the Depositary to pass on any spreads charged on such conversions by the Depositary's affiliated and unaffiliated FX Providers.

---

[1] Benjamin Michael Merryman, the Amy Whitaker Merryman Trust, and the B Merryman and A Merryman 4th Generation Remainder Trust (the "Merrymans" or "Plaintiffs" and, together with the Depositary, the "Parties").

[2] Unless otherwise defined, all capitalized terms have the meanings given to them in the Depositary's Memorandum of Law in Opposition to Plaintiffs' Motion for Class Certification, ECF No. 81.

If the Depositary is correct, this case will be efficiently resolved.  Plaintiffs, on the other hand, plan to argue that these Deposit Agreements do not permit the Depositary to pass on the FX Providers' charges.  But even if Plaintiffs are correct, this Court has recognized that "[p]roof that Defendant failed to remit all that was due to the holders of foreign-issued ADRs on one day will not prove that it did the same thing on the following day or with respect to a different ADR on the same day."  (*See* Decision and Order Granting in Part and Denying in Part Plaintiffs' Motion for Class Certification (the "Class Order"), ECF No. 111 at 20.)  And thus, proving that the Depositary in fact passed on an actual spread on the 39 Cash Distributions paid on the three ADRs at issue will be a complex process, requiring individualized proof on each Cash Distribution.

Permitting the Proposed Intervenors to join in this lawsuit will delay resolution of these issues.  Discovery and additional class certification briefing, at minimum, will be required.  The Depositary has waited three years to vindicate its practices; it should not be forced to participate in continued discovery and class certification briefing to secure a judgment.

The Proposed Intervenors can offer no reasonable basis for waiting to intervene until now.  The question of Plaintiffs' standing to represent all ADR holders, regardless of  Plaintiffs' ownership, has been, or should have been, known to the Proposed Intervenors, Plaintiffs, and their joint counsel, Kessler Topaz Meltzer & Check LLP ("Kessler Topaz") since Plaintiffs first filed suit against the Depositary nearly three years ago in the Western District of Arkansas.  The Depositary raised Plaintiffs' lack of class standing in its motion to dismiss the Arkansas case, and again in its motion to dismiss the Complaint filed in this Court.  A year later in 2016, when this Court issued its decision on the Depositary's motion to dismiss, it expressly reserved judgment on class standing, and made clear the Court would revisit the question at the class certification stage.

Yet Plaintiffs and Kessler Topaz—which routinely files litigation on behalf of Chester County—took no steps to add Chester County as a party.

Chester County itself cannot claim it was any less dilatory than its counsel. Eighteen months ago, Chester County joined the Merrymans in the companion case against JPMorgan Chase Bank, N.A.'s ADR depositary ("JPM") pending before Judge Caproni. Chester County joined that litigation for the precise reason they seek to do so here: the Merrymans were found to lack class standing to represent holders of ADRs they did not themselves own. Put simply, Chester County and Kessler Topaz have known about this issue for a significant amount of time, but rather than seeking to fix it over 18 months ago—as they did in the JPM litigation—they elected to wait until after the close of fact discovery, after the close of expert discovery, after class certification briefing, and after this Court spent substantial time and effort preparing a lengthy class certification decision. The Proposed Intervenors should not be permitted to delay a three-year litigation at this late stage in the case.

This is especially true here because the Proposed Intervenors can fully protect their own interests by filing a separate action. Indeed, the Depositary suspects that the Proposed Intervenors' real motivation for filing the Motion, and not a separate suit, is to attempt to take advantage of potential tolling doctrines to expand their class period and increase the claimed damages. But the law is clear that parties are not permitted to use intervention as a tool for expanding the statute of limitations.

In any event, the most practical, efficient path forward is to permit this litigation to go forward in its current posture. Chester County can file a separate complaint and litigate issues concerning tolling and class certification in the ordinary course without delaying resolution of this matter.

## FACTUAL BACKGROUND

### A.    This litigation has been proceeding for nearly three years.

On June 2, 2015, Plaintiffs brought suit against the Depositary in federal court in Arkansas. *See Merryman v. Citigroup, Inc.*, 5:15-cv-05129-TLB (W.D. Ark. June 2, 2015) (the "Arkansas Litigation"), ECF No. 1.   The day after the Arkansas court dismissed the suit for lack of jurisdiction, on November 20, 2015, Plaintiffs re-filed a nearly identical complaint (the "Complaint") in this Court.  (ECF No. 1.)

On December 28, 2015, the Depositary moved to dismiss the Complaint (ECF No. 26), arguing, among other things, that the Merrymans lacked class standing to represent holders of ADRs that the Merrymans themselves did not own (an argument the Depositary had also made in the Arkansas Litigation[3]).  (*See* Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 27, at 20-22.)  On August 16, 2016, the Court issued its Memorandum Decision and Order Granting in Part and Denying in Part Defendants' Motion to Dismiss (the "MTD Order"), ECF No. 37.  In the MTD Order, the Court reserved judgment on the class standing issue, finding that "[w]hile it is possible that Defendants are correct [that the Merrymans lack class standing to represent ADR holders who held ADRs that the Merrymans did not own], this is an issue best resolved on a motion for class certification."  (*See id.* at 24.)  Despite this Court's warning that it would re-visit class standing at the class certification stage, neither Plaintiffs nor Kessler Topaz sought to add additional parties prior to the Case Management Plan's deadline of September 6, 2016.  (*See* ECF No. 36.)

Instead, the Merrymans, and their counsel, proceeded with extensive, costly, and time-consuming discovery without ever seeking to join or add another plaintiff to this lawsuit.  During

---

[3] *See Merryman v. Citigroup, Inc.*, 5:15-cv-05129-TLB (W.D. Ark. July 10, 2015), ECF No. 18 at 37-39.

discovery, the Parties, and five third-parties, produced more than 95,000 pages of documents in response to nearly 50 document requests and third-party subpoenas, collectively responded to 37 interrogatories and 13 requests for admission, and took 10 depositions. Motion practice was also initiated by Plaintiffs who sought to compel production of foreign exchange data and to preclude the Depositary's reliance on a factual declaration. (*See* ECF Nos. 61, 88.) Both motions were denied. (*See* ECF Nos. 75, 111.) Nearly one year ago, on June 30, 2017, fact discovery was completed and class certification briefing commenced. (*See* Amended Scheduling Order, ECF No. 52.)

Soon thereafter, expert discovery was completed. (*Id.*) The Parties exchanged four expert reports from three experts, totaling 237 pages of proposed testimony and supporting exhibits, and produced detailed expert discovery comprising the backups for two separate damages models. (*See* ECF Nos. 80-46, 82-1, 82-2, and 87-1.) The parties also took three expert depositions. The Depositary also moved to exclude the proposed testimony of Plaintiffs' expert (ECF No. 99), which was fully briefed over six months ago (ECF No. 108), and denied, without prejudice to renew at the merits stage, by the Court on March 22, 2018. (ECF No. 111.)

On June 30, 2017, Plaintiffs filed their Motion for Class Certification, requesting certification of a class of all Cash Distribution recipients for 35 ADRs from 2006 to the present. (ECF No. 76.) Plaintiffs' Motion for Class Certification was fully briefed by September 15, 2017, with 60 total pages of briefing and thousands of pages of supporting exhibits. (*See* ECF Nos. 77, 80-82, 86-87.)

On March 22, 2018, the Court issued the Class Order, which certified a class of holders of 3 ADRs (the "Class") that the Complaint alleged Plaintiffs owned. (*See* ECF No. 111.) In the Class Order, the Court held that the Merrymans lacked class standing to bring claims on behalf of

holders of ADRs the Merrymans did not own because the Merrymans' claims "do not implicate the 'same set of concerns'. . . ." as those of other ADR holders.  (Class Order, ECF No. 111, at 20.)  The Court explained that "[p]roving the [Plaintiffs' claims] is analogous to proving . . . trader-based claims[,]" that are "day-to-day and episodic[,]" and as a result, "[p]roof that Defendant failed to remit all that was due to the holders of foreign-issued ADRs on one day will not prove that it did the same thing on the following day or with respect to a different ADR on the same day."  (*Id.*)

Under the current Scheduling Order, the Parties must submit all pre-trial submissions and the pre-trial order within 10 days after the expiration of the Class notice period.  (*See* ECF No. 93.)  In addition, the Parties agreed to complete summary judgment briefing by the expiration of the Class notice period.  (*See* ECF No. 98.)  Plaintiffs, however, have delayed seeking Class notice until this Motion is resolved.  The Depositary is ready to proceed expeditiously with summary judgment briefing and trial; the Motion, however, has not only delayed this case from proceeding now but, if granted, will further delay this case's resolution.

> **B.**    **Over a year and a half after the deadline to add parties and its decision to join the Merrymans in their nearly identical action against a different depositary, Chester County[4] now seeks to intervene in this action.**

Chester County is a large, sophisticated institutional investor that controls a retirement fund of approximately $370 million in assets, and, as of December 31, 2016, represented more than 3,800 people.  (*See* Porter Decl.[5] Ex. A, County of Chester Pennsylvania Comprehensive Annual

---

[4] In addition to Chester County, Stephen Hildreth, an individual investor who resides in Kennett Square, Pennsylvania and alleges he received Cash Distributions from one Depositary-sponsored ADR also seeks to intervene.  Br. at 6.  The Motion refers to him as both "Stephen Hildreth" and "Steven Hildreth."  *See id.* at 1, 6.

[5] The Declaration of Andrew Porter in Support of Citibank, N.A.'S Memorandum of Law in Opposition to Chester County Employees Retirement Fund and Stephen Hildreth's Motion to Intervene.

Financial Report 2016, Notes to the Financial Statements at 79; Br. at 5-6.)  The fund is maintained

with Mass Mutual.  (*See* Porter Decl. Ex. A at 81.)  Chester County also is a regular client of

Kessler Topaz, which has represented it in at least seven other recent lawsuits related to its

investments.[6]

      Chester County purports to own 20 Depositary-sponsored ADRs, including three that are

in the class.   (*See* Proposed Intervenors' Proposed Class Action Complaint (the "Proposed

Complaint"), ECF No. 113-1 ¶ 15.)  In the Complaint, Plaintiffs pleaded the years in which the

Merrymans received Cash Distributions for their ADRs.[7]  (*See id.* ¶ 18.)  But Chester County

conspicuously does not plead the date or even year when it acquired its ADRs in either the Motion

or the Proposed Complaint.[8]

      Despite Chester County's ownership of ADRs, and its relationship with Kessler Topaz, it

did not seek to intervene in this case either (i) after the Court's MTD Order warning that it would

evaluate class standing at class certification or (ii) prior to the September 6, 2016 deadline for the

---

[6] *See Chester Cty. Employees' Ret. Fund v. Genzyme Corp.*, No. 1084-cv-03777 (Mass. Super. Ct. Suffolk Cty. Filed Sept. 24, 2010); *Chester Cty. Employees' Ret. Fund v. White*, No. 11 C 8114, 2012 WL 1245724 (N.D. Ill. Apr. 13, 2012); *Chester Cty. Employees' Ret. Fund v. Ergen*, No. 12-CV-03291-PAB-KMT, 2013 WL 673290 (D. Colo. Feb. 22, 2013); *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016); *Chester Cty. Employees' Ret. Fund v. New Residential Inv. Corp.*, No. CV 11058-VCMR, 2016 WL 5865004 (Del. Ch. Oct. 7, 2016); *In re Energy Transfer Equity L.P. Unitholder Litig.*, No. CV 12197-VCG, 2017 WL 782495 (Del. Ch. Feb. 28, 2017); *Greenway v. KCG Holdings, Inc.*, No. 2017-0421-JTL, 2017 WL 6557959 (Del. Ch. Dec. 20, 2017).

[7] The Merrymans alleged they received Cash Distributions from: (1) ABB LTD in 2008, 2009, and 2011, (2) Taiwan Semiconductor Manufacturing Company Ltd. from 2009-2012 and in 2014, and (3) WPP PLC in 2012. (Complaint, ECF No. 1 ¶ 18.)

[8] Chester County, of course, knows when it purchased each of the ADRs.  Twelve days before filing this Motion, Chester County sought to be added as a named plaintiff in a nearly identical ADR FX litigation against the Bank of New York Mellon ("BNYM")—a litigation brought by parties represented by Kessler Topaz—and alleged that they had received Cash Distributions from BNYM-sponsored ADRs since 2010.  *See* Memorandum of Law in Support of Plaintiffs' Motion to Add Chester County Employees Retirement Fund as a Named Plaintiff, *In re: The Bank of New York Mellon ADR FX Litigation*, No. 16-cv-00212-JP (S.D.N.Y. Apr. 27, 2018), ECF No. 114 at 8.

addition of parties.  Yet, on November 28, 2016, Chester County joined a nearly identical ADR FX-related litigation, against another depositary bank, JPM, in a class action brought by the Merrymans, who, again, were represented by Kessler Topaz.  *See Merryman v. JPMorgan Chase Bank, N.A.*, No. 15-9188-VEC (S.D.N.Y. Nov. 28, 2016) (the "JPM ADR Litigation"), Corrected Amended Class Action Complaint, ECF No. 55.  The impetus for Chester County's participation in the JPM ADR Litigation was Judge Caproni's ruling on JPM's motion to dismiss—issued one month after this Court's MTD Order—that the Merrymans lacked class standing to represent ADR holders who held ADRs that the Merrymans did not own.  *Merryman v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-9188 (VEC), 2016 WL 5477776, at *13-15 (S.D.N.Y. Sept. 29, 2016), *reconsideration denied*, No. 15-CV-9188 (VEC), 2017 WL 456470 (S.D.N.Y. Feb. 2, 2017).  Thus, even after a court in this district ruled against the Merrymans, Chester County still did not seek permission to be added as a class representative or to intervene in this case, as it had in the JPM ADR Litigation.

After Judge Caproni's ruling on class standing, on September 29, 2016, the Depositary requested this Court's permission to certify the issue of class standing for an interlocutory appeal. (ECF No. 43.)  On January 6, 2017, this Court denied certification, writing that the class standing argument "was prematurely asserted and should be in a motion for class certification."  *See* Memorandum Decision and Order Denying Defendants' Motion for Certification of an Interlocutory Appeal and to Stay Discovery (the "Interlocutory Order"), ECF No. 49, at 2.  Yet, again, despite this caution, and that the case was still in the early stages of discovery, Chester County did not seek to be added or to intervene in this litigation, and never sought to be added at any time during the year-long discovery process.

## APPLICABLE STANDARD

A party seeking intervention may do as of right under Federal Rule of Civil Procedure 24(a) or with permission under Federal Rule of Civil Procedure 24(b).  In order to intervene as a matter of right, an applicant must (1) timely file an application, (2) show an interest in the action, (3) demonstrate that the interest may be impaired by the disposition of the action, and (4) show that the interest is not protected by the parties to the action.  *In re Bank of New York Deriv. Litig.*, 320 F.3d 291, 300 (2d Cir. 2003).  "The intervention application will be denied unless all four requirements are met." *United States v. Pitney Bowes, Inc.*, 25 F.3d 66, 70 (2d Cir. 1994).[9]  Courts consider substantially the same factors when determining whether to grant an application for permissive intervention, *In re Bank of New York Deriv. Litig.*, 320 F.3d at 300 n.5, but may consider additional factors such as whether intervention will "unduly delay or prejudice the adjudication of the rights of the original parties."  *United States v. City of N. Y.*, 198 F.3d 360, 367 (2d Cir. 1999) (citing Fed. R. Civ. P. 24(b)(3)).

## ARGUMENT

The Proposed Intervenors fail to meet the standard for both intervention as of right and permissive intervention because their Motion is untimely, their interest would not be impaired by disposition of this action, and any interests of the Proposed Intervenors that overlap with the Merrymans will be adequately protected.  Further, if the Proposed Intervenors were permitted to intervene now it would significantly prejudice the Depositary, which would need to reopen

---

[9] Contrary to the Proposed Intervenors' assertion, intervention as of right is not "unconditional" (*see* Br. at 2, 7) unless dictated by federal statute.  *See* Fed. R. Civ. P. 24(a)(1).  The Proposed Intervenors do not identify any applicable statute here, but instead assert, pursuant to Rule 24(a)(2), that they have an interest in the action that is not adequately protected by Plaintiffs.  (Br. at 2.)  Thus, "the district court is entitled to the full range of reasonable discretion in determining whether [the above] requirements have been met."  *Rios v. Enter. Ass'n Steamfitters Local Union No. 638 of U. A.*, 520 F.2d 352, 355 (2d Cir. 1975).

discovery and litigate class certification all over again. In contrast, the Proposed Intervenors would suffer no prejudice if the Motion is denied because they can file their own action to protect their purported interests at any time they choose. Accordingly, the Motion should be denied.

## I.    THE PROPOSED INTERVENORS' MOTION IS UNTIMELY

The Proposed Intervenors must demonstrate timeliness whether they seek to intervene as a matter of right or with this Court's permission. In determining timeliness, the court, subject to its discretion, considers the following factors: "(a) how long the applicant had notice of the interest before it made the motion to intervene; (b) prejudice to existing parties resulting from any delay; (c) prejudice to the applicant if the motion is denied; and (d) the presence of unusual circumstances militating for or against a finding of timeliness." *In re Bank of New York Deriv. Litig.*, 320 F.3d at 300; *MasterCard Int'l Inc. v. Visa Int'l Serv. Ass'n, Inc.,* 471 F3d 377, 390 (2d Cir. 2006) (same). Here, each of the three factors the Parties contest weigh against intervention.[10]

### A.    The Proposed Intervenors have known of their interests for several years.

The "length of time the applicant knew or should have know of his interest before making the motion" is "[a]mong the most important factors in a timeliness decision." *Catanzano by Catanzano v. Wing*, 103 F.3d 223, 232 (2d Cir. 1996). There can be no question that the Proposed Intervenor Chester County has been on notice of both its potential claims and that the Merrymans were potentially inadequate representatives of its interests for at least 18 months

First, Plaintiffs filed two purported class action complaints against the Depositary, one in Arkansas nearly three years ago, and this action, two and a half years ago. (*See* Facts, *supra* at 4.) In both litigations, the Depositary moved to dismiss the Complaint to the extent that Plaintiffs sought to represent holders of ADRs that Plaintiffs did not own. (*See* Memorandum of Law in

---

[10] The Proposed Intervenors do not allege any unusual circumstance that militates for a finding of timeliness.

Support of Defendants' Motion to Dismiss, ECF No. 27, at 20-22; *Merryman v. Citigroup, Inc.*, 5:15-cv-05129-TLB (W.D. Ark. July 10, 2015), ECF No. 18 at 37-39.)  Even if the Depositary's argument alone was insufficient to put the Proposed Intervenors on notice that their interests may not be protected here, this Court explicitly reserved decision on the class standing issue until the class certification stage over 21 months ago (in the MTD Order), and again 16 months ago (in the Interlocutory Order).  (*See* MTD Order at 24; Interlocutory Order at 2.)  But Chester County did not act in response to either of the Court's orders.  Neither Plaintiffs nor their counsel Kessler Topaz—who had a long-standing relationship with Chester County—sought to join Chester County, or anyone else, as a party to the litigation, letting the Case Management Plan's deadline to add parties lapse in September 2016.  (*See* Facts, *supra* at 4.)

Second, Chester County elected not seek to intervention concurrent with its joining the JPM ADR Litigation in November 2016, even though a reasonable party seeking to protect its interests and acting in a timely manner would have done so.  The JPM ADR Litigation and this action shared identical plaintiffs, identical claims, and identical plaintiffs' counsel—Kessler Topaz, and, in both cases, identical questions regarding class standing arose.  *See* Memorandum of Law in Support of Defendants' Motion to Dismiss, ECF No. 27, at 20-22; Brief in Support of JPMorgan Chase Bank, N.A.'s Motion to Dismiss, *Merryman v. J.P. Morgan Chase Bank, N.A.*, No. 15-CV-9188 (VEC), ECF No. 20 at 13-15 (S.D.N.Y. Jan. 22, 2016).  Despite the fact that this Court issued two warnings that class standing would be resolved as part of class certification, and Judge Caproni held at the motion to dismiss stage that the Merrymans lacked class standing, Chester County opted to sit on the sidelines.  Now, 18 months later, their request to leave the sideline and join the action is untimely and should be denied.  *See Pitney Bowes, Inc.*, 25 F.3d at 66 (affirming denial intervention, both as of right and permissive, as untimely when, among other

factors weighing against timeliness, proposed intervenor had constructive knowledge of interest in underlying action for at least 15 months and actual knowledge for at least eight months).

The Proposed Intervenors claim that "the earliest" that they "could have learned their interests were not protected was March 22, 2018"—the date of this Court's Class Order finding that Plaintiffs lacked standing to represent the Proposed Intervenors. (Br. at 10.)  But the Proposed Intervenors do not even acknowledge that they joined the JPM ADR Litigation over 18 months ago, or that this Court reserved final judgment on the class standing issue until class certification.

Further, the Proposed Intervenors offer no case law that supports their proposition that an intervenor can sit on their rights and wait to act until an adverse ruling expressly makes clear that their interests are not protected.[11]  Rather, courts routinely deny as untimely eleventh-hour motions to intervene where the proposed intervenors had long been aware of their interests from judicial proceedings or otherwise.  *See, e.g., Catanzano*, 103 F.3d at 233 (affirming denial of intervention where, among other things, applicants knew or should have known from judicial opinion at least 18 months prior to attempted intervention that issue present in litigation could negatively impact proposed intervenor's rights); *In re Bank of New York Deriv. Litig.*, 320 F.3d 291 at 300 (affirming denial of intervention where lawsuit had been pending for more than two years and media attention provided notice of action); *D'Amato v. Deutsche Bank*, 236 F.3d 78, 84 (2d Cir. 2001) (affirming denial of intervention where, in addition to other factors, proposed intervenor had "spent a

---

[11] *California Public Employees' Retirement Systems v. ANZ Securities, Inc.*, 137 S. Ct. 2042, 2051 (2017) and *In re Smith Barney Transfer Agent Litigation*, 884 F. Supp. 2d 152, 160 (S.D.N.Y. 2012), cited by the Proposed Intervenors (Br. at 10), do not help them either.  Those cases relate to the tolling of claims for absent class members and recite the basic principles undergirding *American Pipe* tolling (*see infra* n.14) without reference to timeliness.  Indeed, neither case addresses a situation where, as here, a proposed intervenor was aware of a defect in Plaintiffs' ability to bring class claims for at least 18 months, but elected not to act.

substantial amount of time" involved in litigation related to the subject matter and had notice of interest in the action "well before" the intervention motion was filed).

      **B.**      **The Depositary will be prejudiced by the significant delay caused by having to reopen discovery, move to dismiss the Proposed Complaint, and oppose another motion for class certification.**

If the Proposed Intervenors are allowed to intervene, their intervention will significantly prejudice the Depositary for at least five separate and independent reasons.[12]

*First*, all that remains before this case can proceed to summary judgment and trial is class notice. (*See* Facts, *supra* at 6.) Indeed, the Parties have already agreed on a schedule that calls for summary judgment briefing to be completed concurrent with class notice, and the Court has ordered a schedule directing the Parties to submit a joint pre-trial order within 10 days of the expiration of the class notice period. *Id.* Permitting intervention now, with the finish line in sight, could add a year (or more) to this case, requiring the Depositary to move to dismiss the Proposed Complaint, and the Parties to re-litigate class certification. In the interim, the Depositary continues

---

[12] Permissive intervention also requires consideration of prejudice or undue delay to the original parties. *City of N. Y.*, 198 F.3d at 367. The permissive intervention cases cited by the Proposed Intervenors cite are thus inapposite because none involved prejudice or delay to the original parties. *See Eckert v. Equitable Life Assurance Soc'y of U.S.*, 227 F.R.D. 60, 64 (E.D.N.Y. 2005) (permitting intervention of class member where original named plaintiff settled claim and, unlike here, intervenor had "virtually identical class claims"); *NYTDA, Inc. v. City of N.Y.,* 2014 WL 4274219, at *4 (E.D.N.Y. Aug. 28, 2014) (permitting intervention despite delay because "[t]his case is not the typical case" but "involves a class representative [that] has lost standing to represent the class only after representative status had been granted" and the intervenor "raise[d] no new issues" such that defendant would be prejudiced); *Walker v. Teachers Ins. & Annuity Ass'n of Am.- Coll. Ret. & Equities Fund*, 2011 WL 13077069, at *1 (D. Vt. Filed Aug. 26, 2011) (permitting intervention where class certification had not been decided, no discovery order had been entered, and additional discovery and briefing would not "unduly delay or prejudice" the defendant); *In re Lutheran Brotherhood Variable Ins. Prods. Co. Sales Practices Litig.*, 2002 WL 31371945, at *3-4 (D. Minn. Oct. 7, 2002) (permitting intervention where class had not been certified, defendant offered no specific reasons why intervention would prejudice it, discovery had not yet closed, and intervention would only require depositions of new named plaintiffs and "relatively limited document" production).

to operate with outstanding legal challenges to a practice that it has concluded is lawful.  The Depositary uses numerous affiliated and unaffiliated third-party FX Providers around the world for the conversion of foreign currency Cash Distributions for most of its over 150 sponsored ADRs. Those FX Providers expect compensation for the services that they provide.  Having been the subject of challenge for three years, the Depositary reasonably seeks resolution now so that it can once again operate without substantial litigation expense and with legal certainty as to its practices for the three at-issue ADR programs.[13]

*Second*, the addition of Chester County is an attempt to end-run Second Circuit precedent that precludes *American Pipe*[14] tolling for successive class actions.  *See Korwek,* 827 F.2d 874 at 879 (the "Supreme Court in *American Pipe* and *Crown, Cork* certainly did not intend to afford plaintiffs the opportunity to argue and reargue the question of class certification by filing new but repetitive complaints").  Courts typically do not permit intervention when it would work an end-run around tolling.  In *Kruse v. Wells Fargo Home Mortg., Inc.*, the court found that intervention

---

[13] Intervention would also greatly expand the scope of issues to be litigated at trial, further increasing the delay.  As this Court recognized, proof that the Depositary failed to remit all that was due to ADR holders will have to be shown day-by-day and ADR-by-ADR.  (*See* Class Order, ECF No. 111 at 20.)  The Class currently contains three ADRs and, at most, 39 Cash Distributions. If the Motion is granted, the scope of trial will increase exponentially, to 21 ADRs and hundreds of Cash Distributions, each requiring individual proof.  Courts have declined to permit intervention in similar circumstances.  *See Gordon v. Hunt*, 1984 WL 1206, at *1 (S.D.N.Y. Oct. 31, 1984) (declining to permit intervention because "the intervention of new parties would cause delay at all stages of the proceedings").

[14] In *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) and *Crown, Cork & Seal Co. v. Parker*, 462 U.S. 345 (1983), the Supreme Court outlined what is now known as the *American Pipe* tolling doctrine.  When a putative class action is filed, the *American Pipe* doctrine tolls the statute of limitations for absent class members with regard to their *individual* claims until they are no longer members of the class.  Whether or not *American Pipe* tolling applies to successive class claims is an open issue currently before the Supreme Court in *China Agritech Inc. v. Resh*, 138 S. Ct. 543 (2017).  The Second Circuit has held that American Pipe tolling does not apply to successive class actions where there was a "definitive determination of the inappropriateness of class certification."  *See Korwek v. Hunt*, 827 F.2d 874, 879 (2d Cir. 1987).

as a mechanism for plaintiffs to "resuscitate a suit in which the original named plaintiffs never had standing to sue" was a prejudicial use of Rule 24. *See* 2006 WL 1212512, at *4 (E.D.N.Y. May 3, 2006). In *Kruse,* after plaintiffs conceded that the named plaintiffs lacked standing to sue, a new set of plaintiffs sought to intervene in the action. *Id.* at *3-4. The Court denied intervention because "plaintiffs attempt to do through intervention what they would be strictly prohibited from doing via subsequent filings—continue the tolling benefits for the class action. To the extent they cannot do this through subsequent class action filings, they should not be permitted to do so now." *Id.* at *6. Here, the Proposed Intervenors seek to do the same: apply *American Pipe* tolling to a successive class claim. *See* Proposed Complaint ¶ 48. The Proposed Intervenors should not get the benefit of *American Pipe* tolling when that tolling precludes tolling for successive class actions. The Proposed Intervenors should be required to file a new class action where this issue can be litigated in the ordinary course.[15]

    *Third*, if Chester County is permitted to intervene, additional class certification briefing will be required. As noted above, Chester County is not similarly situated to the Merrymans. They are a large institutional investor that controls a retirement fund of approximately $370 million in

---

[15] In addition, if the Motion is granted, and even if *China Agritech* were to undermine *Korweck* and permit tolling for successive class actions*,* the Depositary expects to file a motion to dismiss the Proposed Complaint based on the additional argument that where a named class representative is determined to lack *standing*, a new class plaintiff cannot cure the standing defect through intervention. *See, e.g., In re Puda Coal Sec. Inc. Litig*., 2013 WL 5493007, at *14-15 (S.D.N.Y. Oct. 1, 2013) (where original class plaintiff lacked statutory standing, new proposed class representatives could not cure standing defect via intervention). Although "[d]istrict courts in this circuit are split on the question of whether American Pipe tolling applies to claims initiated by named plaintiffs when non-named plaintiffs move to intervene after the original claims have been dismissed for lack of standing," *Leber v. Citigroup 401(K) Plan Inv. Comm.*, 129 F. Supp. 3d 4, 22 n.8 (S.D.N.Y. 2015) (collecting cases), this Court has not yet addressed the issue. The Depositary believes that Judge Forrest's opinion in *Puda Coal* is sound and that putative class representatives and their counsel cannot "effectively hold their place in line by initiating lawsuits in disregard of statutory standing requirements, before then searching for a plaintiff who did have standing to intervene in the action." 2013 WL 5493007 at *15.

assets for more than 3,800 people and employs a sophisticated asset manager (Mass Mutual).  (*See* Facts, *supra* at 7.)  The Proposed Intervenors' offer to provide the Depositary with documents in response to the Depositary's prior document requests underscores the issue.  (Br. at 10.)  Because Chester County is a sophisticated institutional investor and not an individual, the Depositary will need to make detailed inquires related to Chester County's institutional knowledge of ADRs, advice provided to Chester County on ADRs by Mass Mutual, expertise in foreign exchange, and the timing of Chester County's acquisition of the ADRs at issue.  This discovery will necessarily include both document requests and 30(b)(6) depositions, and third-party subpoenas to Mass Mutual.  For example, the Depositary will inquire into Chester County's holdings of foreign securities, including whether or not those holdings comprise foreign ordinary shares in addition to ADRs.  Such holdings may demonstrate that Chester County (or Mass Mutual) was able to compare ADR Cash Distribution FX conversions with Cash Distributions received in foreign currency for the ordinary shares, information that would impact Chester County's fraudulent concealment allegations (since it would reflect that the Depositary was incurring a charge for this service).  Indeed, Plaintiffs' expert Mr. Brown conceded as much at his deposition, testifying that a sophisticated investor "absolutely" could compare FX rates in this way.  (*See* Porter Decl. Ex. B, Brown Tr. 180:22-181:10.)  The Depositary believes that with the benefit of this discovery, it will be able to demonstrate that Chester County is not an adequate or typical member of the putative class it seeks to represent.

*Fourth*, the Depositary will also need to take additional discovery to determine whether it has unique defenses against the Proposed Intervenors on the issues of class standing and fraudulent concealment.  Nowhere in the Motion or the Proposed Complaint do the Proposed Intervenors allege when they acquired ADRs.  The Proposed Intervenors omit this fact, likely because,

depending on when the Proposed Intervenors purchased their ADRs, the Depositary may have new class standing arguments that will require an additional round of class certification briefing.

In *Laydon v. Bank of Tokyo-Mitsubishi UFJ, LTD.,* plaintiffs alleged that defendants manipulated LIBOR rates, and amended their complaint to cover a period of time in which the named plaintiff did not enter into any transactions with the defendants.  2017 WL 1093288 at *2 (S.D.N.Y. Mar. 10, 2017).  The court dismissed the claims for the new time period, holding that plaintiffs lacked class standing to represent class members during this new period because "[p]roof  that a bank caused an artificial price one day will not determine whether it did so on another day" and accordingly "claims on behalf of absent class members will not involve the same set of concerns nor would the proof contemplated for all of the claims . . . . be sufficiently similar."  *Id*. at *3.  This Court cited *Laydon* with approval, when it concluded that Plaintiffs lacked class standing to represent holders of ADRs that it did not own, holding that "[p]roof that Defendant failed to remit all that was due to the holders of foreign-issued ADRs on one day will not prove that it did the same thing on the following day or with respect to a different ADR on the same day."  (Class Order, ECF No. 111 at 20.)  Likewise, here, if discovery reveals that the Proposed Intervenors only purchased ADRs recently, they, like the class plaintiffs in *Laydon*, will lack class standing for periods separate from their dates of purchase.  Determining the Proposed Intevenors' purchase dates will require further discovery, and the likely additional briefing on the issue of class standing.

Discovery into the Proposed Intervenors' purchase dates may also reveal that they cannot receive the benefit of tolling based on fraudulent concealment, as they allege in the Proposed Complaint.  (*See* Proposed Complaint ¶¶ 42-45 (asserting a claim for fraudulent concealment).)

Under Pennsylvania law,[16] to allege fraudulent concealment, a plaintiff must allege that a defendant "through fraud or concealment . . . cause[d] the plaintiff to relax his vigilance or deviate from his right of inquiry . . . ." *Baselice v. Franciscan Friars Assumption BVM Province, Inc*., 879 A.2d 270, 278 (Pa. Super. Ct. 2005). The concealment must include "some affirmative independent act . . . upon which the plaintiffs justifiably relied. Mere mistake or misunderstanding is insufficient. Also, mere silence in the absence of a duty to speak cannot suffice to prove fraudulent concealment." *Namani v. Bezark, Lerner, & Devirgilis, P.C.*, 2017 WL 57153, at *3 (Pa. Super. Ct. Jan. 5, 2017). If the Plaintiffs did not own any ADRs prior to the limitations period, it will necessarily be impossible for them to show they relied on an intentional act by the Depositary that kept them from bringing a timely claim.[17] If the Proposed Intervenors purchased their ADRs after 2011 (*i.e.,* the applicable Pennsylvania limitations period), they will not be able to receive the benefit of tolling based on fraudulent concealment prior to that point.[18] This issue can and should be addressed in a motion to dismiss.

---

[16] The Proposed Intervenors are residents of Pennsylvania and, pursuant to New York's borrowing statute, Pennsylvania's four-year statute of limitations for breach of contract claims applies here. *See In re Gaston & Snow*, 243 F.3d 599, 608 n.7 (2d Cir. 2001) (citing *Global Fin. Corp. v. Triarc Corp*., 93 N.Y.2d 525, 526 (1999)) (N.Y. C.P.L.R. 202 "requires application of the shorter of the statute of limitations of New York and the statute of limitations of the state in which the cause of action accrued. A nonresident's contract claim accrues where the nonresident resides"); 42 Pa. Cons. Stat. Ann. § 5525(a).

[17] The Proposed Intervenors' omission of their purchase date is especially telling here because they included such information in seeking intervention in the BNY litigation, *see supra* n.8, and their stated reason for including a purchase date in their BNYM litigation pleading was to avoid this exact issue in that case. *See* Memorandum of Law in Support of Plaintiffs' Motion to Add Chester County Employees Retirement Fund as A Named Plaintiff, *In re: The Bank of New York Mellon ADR FX Litigation*, No. 16-cv-00212-JP (S.D.N.Y. April 27, 2018), ECF No. 114 at 10.

[18] If this is the case, the Proposed Intervenors' ability to adequately represent members of a proposed class may be limited—or, at the least, reduced in time—as well. *See Laydon*, 2017 WL 1093288 at *3 (S.D.N.Y. Mar. 10, 2017) (plaintiffs lacked class standing to assert claims for time period where plaintiffs did not transact with defendant).

*Fifth*, resolution of this action will be further delayed if the Proposed Intervenors are permitted to intervene because the Depositary will need to move to dismiss additional time-barred claims alleged in the Proposed Complaint.  The Proposed Intervenors allege—though do not acknowledge so in their brief—that their claims relate back to the date Plaintiffs filed their Complaint under Fed. R. Civ. P. 15(c)(1).  *See* Proposed Complaint ¶ 47.  But Rule 15(c) does not apply because it is limited to amendments sought pursuant to Rule 15, and the Proposed Intervenors seek to intervene pursuant to Rule 24.  "Rule 24 itself 'does not authorize relation back.  .  .  .  [T]he explicit provisions for relation back of amendments under Rule 15(c) and of substitutions of real parties in interest under Rule 17(a), demonstrate that Congress knew how to create such a mechanism when it so chose.'  .  .  .  In other words, a party may not take advantage of relation back if it is not actually a party to the action in the first instance."  *New Jersey Carpenters Health Fund v. DLJ Mortg. Capital, Inc*., No. 08 CIV. 5653 PAC, 2010 WL 6508190, at *3 (S.D.N.Y. Dec. 15, 2010) (citing *Ceribelli v. Elghanayan*, No. 91 Civ. 3337, 1994 WL 529853, at *2 (S.D.N.Y. Sept. 28, 1994)).  Thus, intervenors are not entitled to Rule 15(c) relation back tolling.[19]

Indeed, the Second Circuit will only permit the claims of a newly added plaintiff—by amendment, as opposed to intervention—to relate back "pursuant to Rule 15(c) if there was a mistake that caused the party to be omitted from the original complaint."  *Merryman v. J.P.*

---

[19] One district court, relying mostly on case law from other circuit courts, has permitted an intervenor's claim to relate back to the date of the original complaint "where no prejudice to the defendant would result."  *Ross v. Patrusky, Mintz & Semel*, No. 90 CIV. 1356 (SWK), 1997 WL 214957, at *8 (S.D.N.Y. Apr. 29, 1997) ("Because of the absence of any evidence . . . that the lateness of the motion prejudiced the government or would unduly delay the disposition of the case . . . the denial for untimeliness also cannot be affirmed . . . .").  Even if relation back were permitted for an intervenor, as demonstrated above, the Depositary will be prejudiced by permitting intervention now.

*Morgan Chase Bank, N.A.*, 319 F.R.D. 468, 472-73 (S.D.N.Y. 2017) (citing *Levy v. U.S. Gen. Accounting Office*, 175 F.3d 254, 255 (2d Cir. 1999) (per curiam)).  In the JPM ADR Litigation, Judge Caproni expressly held that the Merrymans—which added Chester County via amendment to the Merrymans' ADR suit against JPM in November 2016—made a "strategic decision to bring the broadest possible claim against JPM without regard to any actual injury to the Merryman Plaintiffs as the named plaintiffs" and thus could not relate their claims back to the Merryman's filing date.  So too here.  Chester County does not assert that it was a mistake that it was omitted from the original complaint.  Rather, Chester County, the Merrymans, and Kessler Topaz made a strategic choice not to add Chester County in September 2016, or any other time prior to now.  Thus, in light of the Proposed Intervenors' relation back allegations, the Depositary will need to move to dismiss the Proposed Complaint insofar as it alleges that the Proposed Intervenors get the benefit of relation back tolling.

### C.    The Proposed Intervenors will not be prejudiced because they may file their own action.

The Proposed Intervenors will not be prejudiced if the Motion is denied as they are free to file a separate action and assert whatever rights they purport to have.  This not only weighs against a finding that the Proposed Intervenors have acted in a timely manner, but also means that the Proposed Intervenors fail to satisfy the third and fourth prongs for intervention as of right: demonstrating that they have an interest that may be impaired by the disposition of an action and showing that their interest is not protected by the parties to the action.  *In re Bank of New York Deriv. Litig.*, 320 F.3d 291 at 300.

Courts have found that where an applicant is free to bring a separate action against defendants, they are not prejudiced if their motion to intervene is denied.  *In re Holocaust Victim Assets Litig.*, 225 F.3d 191, 199 (2d Cir. 2000) (affirming that proposed intervenors were not

- 20 -

prejudiced even though (1) separate litigation "could take years," (2) the goals of judicial economy and uniformity of decisions militated against separate suits, and (3) defendants would not face same public pressure to settle later suit); *Hnot v. Willis Grp. Holdings Ltd.*, 2006 WL 3476746, at *5 (S.D.N.Y. Nov. 30, 2006), *aff'd*, 234 F. App'x 13 (2d Cir. 2007) (potential costs and burdens of separate suit did not outweigh prejudice to defendants that would result from further delay in resolution of years-old claims). In *Gordon*, an intervenor proposed to act as class representative for an expanded class after a certification decision severely limited the class. 1984 WL 1206, at *1 (S.D.N.Y. Oct. 31, 1984). The court stated that the "obvious effect of [the class certification] decision . . . was that many investors who might have been harmed by defendants' activities would be unable to participate in this action as class members." *Id.* In denying the motion, the Court noted that the decision did not prevent the intervenors from bringing their own plenary suit and that intervention of new parties would cause delay from "extensive new discovery as to the transactions in the proposed expanded period, further depositions, etc." [20] *Id.* That is precisely the case here. The Proposed Intervenors can fully vindicate their rights in a separate suit, and will only cause delay and prejudice to the Depositary by intervening now.

The cases cited by the Proposed Intervenors are inapposite as neither involved intervention under Rule 24. *Perez v. 117 Avenue of the Americas Food Corp.* addressed the question of joinder under Rule 21 and amendment under Rule 15, which are subject to a different standard. Moreover, joinder was only sought to correct the corporate identities and ownership of defendants "less than two weeks after Defendants handed over their responses to interrogatories." 2016 WL 5415090,

---

[20] Even if the Proposed Intervenors argue that bringing a separate suit would impose a burden on them—an argument they have not yet made—it would not be a basis for granting intervention. *See In re Holocaust* at 199 ("potential obstacles to the pursuit of an independent lawsuit do not 'impair or impede the applicant's ability to protect [its] interest' to an extent warranting intervention as of right" (citing Fed. R. Civ. P. 24(a)(2)).

at *1-2 (S.D.N.Y. Sept. 27, 2016). In *Birmingham Steel Corp. v. Tennessee Valley Authority*, the Eleventh Circuit held the district court abused its discretion by decertifying a class after determining original named plaintiff had become inadequate class representative without permitting reasonable time for class counsel to determine if a new class representative could be substituted as a replacement. 353 F.3d 1331, 1333-34, 39 (11th Cir. 2003). In neither case did a proposed intervenor seek to expand an action following class certification, necessitating the reopening of discovery and a new round of motion to dismiss and class certification briefing when it easily could have brought its own separate suit.

Moreover, because the Proposed Intervenors can bring their own action, their interests will not be impaired by resolution of this action, and to the extent the Proposed Intervenors' rights are implicated by this action, this Court has already found that Plaintiffs are adequate to protect that interest.[21] (*See* Class Order, ECF No. 111 at 27.)

The Proposed Intervenors make only one argument that they will suffer prejudice if they are not permitted to intervene: that Plaintiffs cannot bring a claim for injunctive relief. *See* Br. at 12. But the Proposed Intervenors could easily bring an injunctive claim in their own action, and

---

[21] In analyzing this Motion, the Court may again consider offensive collateral estoppel. (*See* Class Order, ECF No. 111 at 18, 34 n.2.) The Depositary notes that offensive collateral estoppel requires that "(1) the ***identical*** issue was raised in a previous proceeding; (2) the issue was "actually litigated and decided" in the previous proceeding; (3) the party had a "full and fair opportunity" to litigate the issue; and (4) the resolution of the issue was "necessary to support a valid and final judgment on the merits." *See Interoceanica Corp. v. Sound Pilots, Inc.,* 107 F.3d 86, 91 (2d Cir. 1997) (emphasis added) (citation omitted). To the extent that the Proposed Intervenors own different ADRs than the Merrymans they do not have identical issues; indeed, that was the very crux of the Court's class standing decision—the proof for the named Plaintiffs and absent members would be different. *Id.* at 20. Accordingly, Chester County can best protect its own interests in a separate litigation and can designate any such suit as related to this case to get the benefit of discovery taken to date—obviating the Proposed Intervenors' discovery concern. *See* Br. at 11. Of course, to the extent the Merrymans and Chester County do have any overlapping interests—such as the three ADRs they both purport to own—this Court already held that the Merrymans will be able to adequately protect them. (*See* Class Order, ECF No. 111 at 27.)

given the delays that will ensue if the Motion is granted, *see supra* § I(B), there is little if any reason to believe that intervention would lead to a significantly quicker resolution than a separate suit. *Leonard v. Abbott Labs, Inc.*, 2012 WL 764199, at *8 (E.D.N.Y. Mar. 5, 2012) is inapposite. There, unlike here, plaintiffs had not moved for class certification and the litigation was in an early stage "where the parties have only engaged in limited discovery," and as a result the defendant was not prejudiced by intervention. *Id*.

## **CONCLUSION**

For the above reasons, the Depositary respectfully requests that the Court deny the Proposed Intervenors' Motion.

Dated: May 23, 2018

<div style="margin-left: 40%;">

/s/ Daniel M. Perry
MILBANK, TWEED, HADLEY & McCLOY LLP
Daniel M. Perry
Andrew L. Porter
28 Liberty Street
New York, NY 10005
Telephone: 212-530-5000

WALFISH & FISSELL LLP
Rachel Penski Fissell
11 Broadway
Suite 615
New York, NY 10004
Telephone: 212-672-0523

*Attorneys for Citibank, N.A.*

</div>

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BENJAMIN MICHAEL MERRYMAN, AMY WHITAKER MERRYMAN TRUST, AND B MERRYMAN AND A MERRYMAN 4TH GENERATION REMAINDER TRUST, individually and on behalf of all others similarly situated,<br><br>            Plaintiffs,<br><br>      v.<br><br>CITIGROUP, INC., CITIBANK, N.A., and CITIGROUP GLOBAL MARKETS INC.,<br><br>            Defendants. | Civil Action No.: 1:15-cv-09185-CM-KNF |

## <u>CERTIFICATE OF SERVICE</u>

I, Andrew L. Porter, am an attorney duly admitted to practice law before this Court. I hereby certify that on May 23, 2018, I caused a true and correct copy of Citibank N.A.'s Memorandum of Law in Opposition to Chester County Employees Retirement Fund and Stephen Hildreth's Motion to Intervene, and the Declaration of Andrew Porter in Support of Citibank N.A.'s Reply Memorandum of Law in Opposition to Chester County Employees Retirement Fund and Stephen Hildreth's Motion to Intervene, and the exhibits thereto, to be served via operation of this Court's ECF system and email on:

Joseph H. Meltzer
Sharan Nirmul
Ethan J. Barlieb
Jonathan F. Neumann
Megan Koneski
KESSLER TOPAZ MELTZER & CHECK, LLP
280 King of Prussia Road
Radnor, PA 19087
Tel: (610) 667-7706
Fax: (610) 667-7056
Email: jmeltzer@ktmc.com
Email: snirmul@ktmc.com
Email: ebarlieb@ktmc.com
Email: jneumann@ktmc.com
Email: mkoneski@ktmc.com
*Counsel for Plaintiffs*

DATED:  May 23, 2018
         New York, New York

_____
Andrew L. Porter

2